# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF L

2006 JAN 12  PM 12: 57

LORETTA G. WHYTE
CLERK

| | | |
|---|---|---|
| **PATRICK JOSEPH TURNER, ET AL.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 05-4206**<br>**CONSOLIDATED CASE** |
| **MURPHY OIL USA, INC.** | * | **SECTION "L" (2)** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**THIS DOCUMENT RELATES TO ALL CASES**

## ORDER AND REASONS

Before the Court are some six motions from Defendant, Murphy Oil USA, Inc., and one motion from Plaintiffs regarding exclusion of expert opinions, affidavits, and/or testimony for the class certification hearing to be held on January 12, 2006. The record document numbers for these motions are 119, 120, 121, 122, 130, 135, and 136. For the following reasons, all of the parties' motions are DENIED, with the exception of Defendant's Motion to Exclude the Testimony of Dr. Erno Sajo (121), which motion is hereby GRANTED IN PART.

### I. Factual and Procedural Background.

This litigation involves twenty-six consolidated class action lawsuits filed by residents of St. Bernard Parish, Louisiana against Defendant Murphy Oil USA, Inc. The incident at issue in all suits is a discharge of oil that occurred at the Defendant's Meraux, Louisiana oil refinery sometime in the first week of September 2005. It is alleged that shortly after Hurricane Katrina an oil tank discharged thousands of barrels of oil into the area surrounding the refinery. Plaintiffs are homeowners and residents in the area near the oil refinery, and they have brought a variety of claims for property damage and personal injury, among others, resulting from the discharge.

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDsp_____
___ Doc. No._____

These cases have been consolidated, and Plaintiffs have filed a Motion for Class Certification which is set for hearing on January 12, 2006.

In preparation for this hearing, Plaintiffs and Defendant have filed several motions in limine to exclude the testimony of various experts.  Defendant has filed the following six motions:

1.     Motion to exclude Plaintiffs' Real Estate Expert, John Kilpatrick;

2.     Motion to exclude Plaintiffs' Air Modeler Expert, Dr. Erno Sajo;

3.     Motion to exclude Plaintiffs' Hydrologist/Fate and Transport Expert, Dr. Philip Bedient;

4.     Motion to exclude Plaintiffs' Engineering Expert, Marco Kaltofen;

5.     Motion to exclude Plaintiffs' Environmental Science Expert, Paul Templet; and

6.     Motion to exclude Dr. Vincent Wilson.

Plaintiffs have filed the following motion:

1.     Motion to exclude Defendant's "Fingerprint" Expert, Scott Stout.

These motions shall be addressed in turn.  To the extent the Court grants or denies the parties' motions, the ruling shall apply to all evidence submitted from that expert, including but not limited to testimony, opinion, or affidavit.

## II. Motions in Limine to Exclude Expert Testimony in Class Certification Hearings

### a.     Applicable Standard During Class Certification

Counsel have raised the issue of whether a full *Daubert* examination of expert testimony is appropriate at this stage of the proceedings.  Rule 702 of the Federal Rules of Evidence provides that:

> If scientific, technical, or other specialized knowledge will assist
> the trier of fact to understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by knowledge, skill,
> experience, training, or education, may testify thereto in the form
> of an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable
> principles and methods, and (3) the witness has applied the
> principles and methods reliably to the facts of the case.

Rule 702 is a codification of the U.S. Supreme Court's decisions in *Daubert v. Merrell Dow*

*Pharmaceuticals*, 509 U.S. 579 (1993), and *Kuhmo Tire v. Carmichael*, 526 U.S. 137 (1999),

which established that, in order for an expert's testimony to be admissible at trial, a district court

must evaluate the reliability of the methodology of a proposed expert and the relevance of his or

her testimony to the facts at issue. The Court in *Daubert* stated that a district court may consider

four non-exclusive factors in determining the reliability of an expert's methodology: (1) whether

the expert's theory has been tested, (2) whether the theory has been subject to peer review and

publication, (3) the known or potential rate of error, and (4) the general acceptance of the

methodology in the scientific community. *Daubert*, 509 U.S. at 593-95. The person seeking to

admit expert testimony bears the burden of proving reliability by a preponderance of the

evidence. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). The

focus is not upon the expert's conclusions but upon his or her methodology. *Id.* In addition, the

party must also prove the expert's relevance. The expert opinion must have a "valid ...

connection to the pertinent inquiry." *Daubert*, 509 U.S. at 592.

Some courts have opined that a full review of expert testimony under the *Daubert*

standard is not suitable to class certification proceedings. *See generally* Steven Glickstein,

Melissa C. Morrow, & Julie K. du Pont, *Does Daubert Apply to Class Certification Hearings?*,

695 PLI/Lit 423 (2003) (collecting cases that have applied varying *Daubert* and *Daubert*-like standards to class certification).  The Second Circuit has held that a district court should only review an expert's testimony at class certification stage to ensure that the "opinion is not so flawed that it would be inadmissible as a matter of law." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 135 (2d Cir. 2001).  *See also Blades v. Monsanto Co.*, 400 F.3d 562, 569-70 (8th Cir. 2005) (noting that the district court refused a *Daubert* examination of an expert because the court found that all evidence was relevant during class certification); *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 648 n.35 (S.D. Ala. 2005) (admitting an expert's testimony for class certification because it was not fatally flawed); *Anderson v. Boeing Co.*, 222 F.R.D. 521, 526-27 (N.D. Okla. 2004) (same); *In re Polypropylene Carpet Antitrust Litig.*, 996 F.Supp. 18, 26 (N.D. Ga. 1997) (finding *Daubert* inapplicable during class certification and employing a three-pronged inquiry regarding probative value and reliability).

The rationale for the *Visa Check* lower standard of *Daubert* review is the district court's role during class certification, because class certification is "not an occasion for examination of the merits of the case." *Visa Check*, 280 F.3d at 135 (internal citation omitted).  In keeping with that role, the Second Circuit found that during class certification:

> a district court may not weigh conflicting expert evidence or engage in a statistical dueling of experts.  The question for the district court at the class certification stage is whether the plaintiffs' expert evidence is sufficient to demonstrate common questions of fact warranting certification of the proposed class, not whether the evidence will ultimately be persuasive.

*Id.*

The Fifth Circuit has not directly weighed in on this issue.  One of the few district courts

in the Fifth Circuit that has spoken on this issue found that a trial court could engage in *Daubert*

review at the class certification stage because the expert opinion at issue directly related to an

element of class certification itself, predominance. *Bell v. Ascendant Solutions, Inc.*, No. 301-

CV-0166-N, 2004 WL 1490009 at *2 (N.D. Tex. Jul. 1, 2004). The district court reasoned that,

in order to perform a meaningful determination of the class certification issues, the district court

may be required to go beyond the pleadings to understand the claims, defenses, relevant facts and

substantive law applicable to class certification. *Id.* (quoting *Castano v. Am. Tobacco Co.*, 84

F.3d 734, 744 (5th Cir. 1996)). The district court found that *Daubert* review was necessary in

order for the court to review class certification issues with the appropriate scrutiny. *Id.*

The Fifth Circuit recently affirmed the district court's denial of class certification in *Bell*,

and found that the district court had acted properly in "applying 'rigorous, though preliminary,

standards of proof'" to the class certification decision. *Bell v. Ascendant Solutions, Inc.*, 422

F.3d 307, 313 (5th Cir. 2005) (quoting *Unger v. Amedisys, Inc.*, 401 F.3d 316, 322 (5th Cir.

2005)). In *Bell*, the Fifth Circuit stated that a district court should undertake a "'careful

certification inquiry'" based upon "'adequate admissible evidence[.]'" *Id.* (quoting *Unger*, 401

F.3d at 319).

Defendant argues that a full *Daubert* review should apply at this stage. Defendant cites to

*General Telephone Company of Southwest v. Falcon*, 457 U.S. 147, 161 (1982), wherein the

U.S. Supreme Court directed that lower courts perform a "rigorous analysis" into whether the

elements of Rule 23(a) have been satisfied for class certification purposes. Defendant argues that

this rigorous analysis includes full examination of experts under *Daubert*.

The Court concludes that a limited *Daubert* review is appropriate at this time. In

previous cases of class certification, this Court has engaged in a limited *Daubert* inquiry,

following the rationales of *Visa Check* and *Castano*. *See In re Propulsid Prod. Liab. Litig.*,

MDL No. 1355, Minute Entry of August 23, 2001, Rec. Doc. No. 274. The experts at issue all

relate in one way or another to the elements of Rule 23 – commonality, typicality, numerosity,

adequacy of representation, predominance, and superiority. The Court finds that, as long as the

expert's opinion is relevant to one of the six elements needed for class certification, that opinion

should be admissible, provided it survives a limited *Daubert* review.

The limited *Daubert* review undertaken by the Court differs from a full *Daubert* review

in a number of ways. First, the Court's review of the expert's opinion shall be limited to the

opinion's reliability and relevance to the requirements of class certification under Rule 23. The

Court does not determine at this time whether the expert opinion would pass muster at the time

of trial on issues like causation, and the Court's present ruling does not preclude a full *Daubert*

examination at the appropriate time. Second, the Court cannot "engage in a statistical dueling of

experts" at the class certification stage. *Visa Check*, 280 F.3d at 135. Thus, the Court shall

review the expert's opinion to ensure that it contains no flaws that would render it inadmissible

as a matter of law: the methodology must show some hallmarks of reliability, whether through

peer review or use of generally-accepted standards or methods; the expert must be qualified; and

the opinion must have probative value for the issues of class certification. *See In re*

*Polypropylene Carpet Antitrust Litig.*, 996 F.Supp. 18, 26 (N.D. Ga. 1997) (employing a similar

standard). The Court shall now evaluate each motion in turn.

   **b.    Plaintiffs' Real Estate Expert, John Kilpatrick**

Dr. Kilpatrick was retained by Plaintiffs to testify as an expert regarding the valuation of

properties that have been damaged due to environmental pollution.  Dr. Kilpatrick employs large-scale real estate valuation models, including mass appraisal models, to opine upon the diminution of value of property that has suffered from environmental contamination.  Plaintiffs state that Dr. Kilpatrick intends to testify upon the decreased value of properties in the area surrounding the Murphy Oil spill.

### 1.     Defendant's Objections

Defendant argues that Dr. Kilpatrick's testimony should be excluded for three reasons: 1) the opinion's failure to take into account any potential diminution in property value due to Hurricane Katrina, including Dr. Kilpatrick's failure to consider whether the mass appraisal techniques used in the opinion are valid in a post-disaster market; 2) the opinion lacks foundation, in that the opinion assumes no geographical boundaries; and 3) the opinion lacks foundation because Dr. Kilpatrick performed no research regarding comparable sales, pending sales, historical sales, or market trends in St. Bernard Parish.

Thus, Defendant attacks Dr. Kilpatrick's opinion primarily for its factual basis or conclusions that the expert reached.  Defendant does not argue that Dr. Kilpatrick lacks expertise, or that his mass appraisal techniques are novel and untested.   Rather, Defendant argues that Dr. Kilpatrick's method is unreliable and irrelevant because Dr. Kilpatrick never determined that his method would be applicable to post-Katrina St. Bernard Parish and because Dr. Kilpatrick has not completed any research on St. Bernard Parish.

### 2.     Plaintiffs' Response

Plaintiffs respond that Dr. Kilpatrick has testified on similar issues using similar methodology in forty-six cases, and that his opinion has never been excluded by a court.

Plaintiffs also offer Dr. Kilpatrick's curriculum vitae in support of their argument that he has the necessary expertise to offer expert testimony in this matter. Dr. Kilpatrick has a M.B.A. and a Ph.D. in Real Estate Finance from the University of South Carolina. He has over twenty-five years of experience in real estate development, business development and statistical and financial analysis. He has published extensively on real estate valuation and appraisal. Dr. Kilpatrick is a consultant on environmentally impaired property to the U.S. General Services Administration and the U.S. Army, among other organizations. He is certified as a general appraiser in Louisiana, and is an instructor at the national level of the Uniform Standards of Professional Appraisal Practice.

Plaintiffs also argue that the mass appraisal method used by Dr. Kilpatrick has been peer-reviewed and is considered the only technique that can provide reliable valuations of environmentally-damaged properties. Plaintiffs further argue that Dr. Kilpatrick's testimony is directly relevant to the Plaintiffs' argument that class-wide issues predominate over individual questions, such that class certification is appropriate. Dr. Kilpatrick's opinion will provide support for Plaintiffs' argument that the proposed class' damages are common and somewhat uniform. In response to Defendant's argument that Dr. Kilpatrick has failed to perform research in St. Bernard Parish, Plaintiffs make two arguments. First, Plaintiffs argue that Dr. Kilpatrick did not need to study St. Bernard Parish specifically at this point: Dr. Kilpatrick will testify that mass appraisal techniques make it possible to evaluate Plaintiffs' claims as a class, which Plaintiffs argue is the only relevant consideration at this stage. Second, Plaintiffs argue that Dr. Kilpatrick has performed preliminary research in the parish, but that the disruptions caused by Hurricane Katrina in access to public records has make further research impossible at this stage.

### 3.      Admissibility of Dr. Kilpatrick's Opinion

Plaintiffs are offering Dr. Kilpatrick's opinion at this phase of the case in support of the commonality, typicality, and predominance of class-wide issues regarding their property damage claims. Thus, the Court shall evaluate Dr. Kilpatrick's qualifications in light of Plaintiffs' intended use of his testimony. Dr. Kilpatrick's expertise is clear from his curriculum vitae. He has extensive experience and education in real estate appraisal, in particular in appraisal of environmentally-impacted sites. Dr. Kilpatrick bases his opinion upon mass appraisal techniques, which are governed by Rule 6 of the Uniform Standards of Professional Appraisal Practice (USPAP). The USPAP are the governing rules of real estate appraisal in Louisiana. In his report, Dr. Kilpatrick cites a number of studies that support his view that mass appraisal techniques are more reliable than appraisals on a house-by-house basis. He further cites to studies that support his view that mass appraisal is a useful form of valuation for environmentally-damaged properties, and that these properties suffer diminution in value on a group basis because of the negative perceptions of potential buyers.

While Dr. Kilpatrick's expert report often speaks in generalities, the Court finds that his failure to perform extensive research in St. Bernard Parish does not render his opinion on the issues related to class certification inadmissible. Dr. Kilpatrick is qualified and is using generally-accepted methodology. Moreover, he has conducted preliminary research in St. Bernard Parish. Defendant's argument that Dr. Kilpatrick's testimony should be excluded really concerns what weight the Court should afford his opinion. This is an issue that can be addressed during cross-examination or summation. Accordingly, Defendant's motion to exclude the opinions, affidavits, and/or testimony of Dr. Kilpatrick is DENIED.

c.       **Plaintiffs' Air Modeler Expert, Dr. Erno Sajo**

Plaintiffs retained Dr. Erno Sajo to testify as an expert in health and medical physics with a special emphasis on outdoor and indoor atmospheric dispersion.  Specifically, Plaintiffs state that Dr. Sajo intends to testify that the contaminants from the Murphy Oil spill will "resuspend" in the air in the affected area during clean-up, and that the re-suspension will pose a threat of personal injury to people cleaning and rebuilding their homes and businesses.  This testimony has some relevance on numerosity and typicality.  Dr. Sajo has a Ph.D. in Physics from the University of Massachusetts, and a B.S./M.S. in Mechanical/Nuclear Engineering from the Technical University of Budapest, Hungary.  He is a professor of Physics and Environmental Studies at Louisiana State University.  Dr. Sajo has published extensively on the physics and transport of aerosols, and he states that he is an expert in health physics and medical physics.

1.       **Defendant's Objections**

Defendant argues that Dr. Sajo's testimony should be excluded because his opinions are generalized and are not based upon data collected in St. Bernard Parish.  Defendant contends that, because Dr. Sajo cannot relate his methodology to specific data collected in the proposed affected area, Dr. Sajo's opinion is irrelevant.  According to Defendant, although Dr. Sajo has the equipment and expertise to perform scientific studies on the movement of air particles, he performed no such study in St. Bernard Parish and did not attempt to replicate conditions in St. Bernard Parish in any study.  As such, Defendant argues that Dr. Sajo cannot offer an opinion on how air particles move in the affected area or how Plaintiffs may be commonly affected by air particle contamination.

-10-

### 2.    Plaintiffs' Response

Plaintiffs contend that Defendant has not challenged Dr. Sajo's expertise or his methodology. According to Plaintiffs, Defendant only argues that Dr. Sajo cannot testify regarding St. Bernard Parish because he has conducted no experiments there. Plaintiffs argue that Dr. Sajo is equipped to testify based upon his own extensive experience with dispersion of air particles, and that experiments in St. Bernard Parish were unnecessary to form Dr. Sajo's opinion.

### 3.    Admissibility of Dr. Sajo's Opinion

Although this is somewhat unclear from Plaintiffs' memorandum in support of class certification, it appears that Plaintiffs intend to offer Dr. Sajo's opinion to bolster their arguments for numerosity, commonality and predominance of the property damage and personal injury claims. Defendant's arguments regarding Dr. Sajo are similar to those offered for Dr. Kilpatrick. Defendant does not suggest that Dr. Sajo lacks the expertise to render an opinion on dispersion of air particles. Although Defendant suggests that the Court may reach the same conclusions as Dr. Sajo without the need of expert opinion, Defendant does not otherwise attack Dr. Sajo's methodology.

However, it does not appear that Dr. Sajo's opinion is based on any evidence drawn from St. Bernard Parish. Plaintiffs appear to concede as much in their reply brief. While it is true that an expert may testify based upon his knowledge and experience on information and data collected by others, the expert's testimony must be based upon sufficient facts and data. Accordingly, Defendant's motion to exclude the testimony of Dr. Erno Sajo is hereby GRANTED IN PART. Dr. Sajo will be allowed to offer his opinion, affidavit, or testimony, but

that opinion shall be limited to explaining how chemicals are generally dispersed based upon his knowledge and expertise. This may have some relevance on numerosity. However, Dr. Sajo may not testify as to any specific factor related to causation of damage or dispersion of air particles in St. Bernard Parish. Furthermore, the weight or credence of his testimony can be attacked during cross-examination or summation.

### d.   Plaintiffs' Hydrologist/Fate and Transport Expert, Dr. Philip Bedient

Plaintiffs intend to offer Dr. Philip Bedient as an expert regarding the boundaries of the area affected by the oil spill. In addition, Dr. Bedient intends to testify that the St. Bernard Parish pumping stations can operate to pull oil away from the source of the leak and pump it into an expanded area. Dr. Bedient is an civil and environmental engineering professor at Rice University, and teaches and performs research in surface and ground water hydrology and flood prediction systems. He specializes in groundwater contamination, and has overseen the monitoring and remediation of more than 25 hazardous waste sites nationwide, and has provided expert assistance with numerous lawsuits regarding hazardous waste sites and chemical spills.

### 1.   Defendant's Objections

Defendant argues that Dr. Bedient's testimony should be excluded because it is irrelevant and because it is unsupported by any independent scientific research. According to Defendant, Dr. Bedient has based his expert opinion upon test results from another expert for Plaintiffs, Dr. Marco Kaltofen. Defendant argues that, because Dr. Bedient has not performed his own research or testing in the area, and has not considered the testing or results from Murphy or the EPA, Dr. Bedient is unable to provide a relevant opinion on the matters at issue during class certification. Moreover, Defendant contends that, because Dr. Bedient has not performed his own research, he

has applied no scientific methodology to his opinion. Defendant argues that Dr. Bedient's testimony would be both unreliable and irrelevant, and as such it should be excluded.

### 2.    Plaintiffs' Response

Plaintiffs argue that, while Dr. Bedient performed no studies in St. Bernard Parish, he relied upon information from a variety of sources in forming his opinion. Specifically, Dr. Bedient states in his affidavit that he bases his opinion upon data from the EPA and the Agency for Toxic Substances and Disease Registry ("ATSDR"). He also based his opinion on the findings of Dr. Marco Kaltofen, another expert for Plaintiffs. In addition, he considered geographic and weather data for the area.

### 3.    Admissibility of Dr. Bedient's Opinion

Plaintiffs argue that Dr. Bedient's testimony is relevant to the Court's consideration of numerosity, in that he offers an opinion on the range of properties affected by the spill, and commonality, in that he states that contamination will be spread over a wide area. Dr. Bedient's extensive experience makes him qualified to render an opinion upon groundwater contamination generally. In addition, Dr. Bedient's affidavit makes clear that he has based his opinion on a variety of independent sources, and has not solely relied upon the research of Dr. Marco Kaltofen. The fact that Dr. Bedient has not performed studies in St. Bernard Parish is irrelevant, given that he has based his opinion upon data collected in the parish. Moreover, Dr. Bedient's testimony appears to be only relevant at least at this phase of the case to the Plaintiffs' allegations regarding the size of the affected area. Accordingly, Defendant's motion to exclude the testimony, affidavit, and/or opinion of Dr. Philip Bedient is DENIED.

e.       **Plaintiffs' Engineering Expert, Marco Kaltofen**

Marco Kaltofen was retained by Plaintiffs to testify as an expert regarding the area

impacted by the oil spill, based upon testing he has performed in the area.  Mr. Kaltofen took a

range of soil samples in St. Bernard Parish after the spill and subjected them to GC/FID

chromagrams and GC/MS spectra fingerprinting.  From this testing, Mr. Kaltofen gave an

opinion upon the geographic boundaries for the area affected by the oil spill.  Mr. Kaltofen holds

a B.S. in general engineering from Boston University, and is a Massachusetts Registered

Professional Civil Engineer.  He has over twenty years experience as an engineer, including

experience overseeing a number of environmental remediation sites in Massachusetts.  In

particular, Mr. Kaltofen has studied post-Katrina petroleum spills in Mobile Bay and Pascagoula,

in addition to his research in St. Bernard Parish.

1.       **Defendant's Objections**

Defendant requests the exclusion of Mr. Kaltofen's testimony because Defendant argues

that Mr. Kaltofen bases his opinion on deficient sampling of the affected area and upon flawed

methodology.  Plaintiffs have proposed a boundary for the area affected by the oil spill that is

significantly larger than that proposed by Murphy or that currently listed by the EPA.  Defendant

alleges that Plaintiffs established this boundary based upon the opinion of Mr. Kaltofen.

According to Defendant, Mr. Kaltofen based his opinion of contamination in the disputed zones

based upon a very small number of samples in proportion to the number of residences in the area.

In some areas, Defendant argues that Mr. Kaltofen bases his opinion on one sample alone.

2.       **Plaintiffs' Response**

Plaintiffs respond that Mr. Kaltofen is qualified to render an opinion based upon his

expertise and his testing of the affected area.  Plaintiffs contend that Defendant does not challenge Mr. Kaltofen's qualifications or the type of testing he performed – only the number of samples used.  Plaintiffs argue that the samples taken are reliable and that Mr. Kaltofen is qualified to render an opinion on this subject.

### 3.    Admissibility of Mr. Kaltofen's Opinion

Plaintiffs appear to offer Mr. Kaltofen's testimony to support virtually all of the elements of class certification (except perhaps adequacy of representation).  Although the Defendant raises legitimate concerns regarding the small number of samples that Mr. Kaltofen performed, this fact alone should not exclude his testimony.  Mr. Kaltofen is well-qualified, and Defendant does not dispute that the type of tests that he has performed are generally accepted as sound in the engineering community.  In fact, the GC/FID chromatograms and GC/MS spectrometry taken by Mr. Kaltofen are the same type as taken by Defendant's expert, Scott Stout.  Defendant's concern with the number of samples addresses the probative value of Mr. Kaltofen's testimony.  On its face, Mr. Kaltofen's opinion appears to be relevant to these proceedings.  Accordingly, Defendant's motion to exclude the expert opinion, affidavit, and/or testimony of Marco Kaltofen is DENIED.

### f.    Plaintiffs' Environmental Science Expert, Paul Templet

Plaintiffs have retained Dr. Paul Templet to testify as an expert regarding the environmental risks of the oil spill and the need for a comprehensive cleanup of the affected area. Dr. Templet is an environmental scientist and a professor at Louisiana State University in the Department of Environmental Studies.  He holds a Ph.D. from Louisiana State University in chemical physics and an M.S. from Duke University in physical chemistry.  He has more than 40

years of experience in environmental chemistry, particularly in the Southeast Louisiana region, and has testified as an expert on numerous occasions.

### 1.      Defendant's Objections

Defendant argues that Dr. Templet's opinion should be excluded because lacks foundation and because it belies fundamental misunderstandings of the nature of the oil spill. Defendant contends that Dr. Templet failed to perform any studies in St. Bernard Parish and has employed no discernible methodology in forming his opinion.  While Dr. Templet intends to testify regarding the need for a comprehensive cleanup of the area, Defendant alleges that Dr. Templet is unfamiliar with the area itself and the nature and extent of the cleanup currently being performed.  Defendant argues that Dr. Templet's lack of information makes his testimony inherently unreliable, and argues for exclusion on this ground.

### 2.      Plaintiffs' Response

Plaintiffs point out that Defendant has not challenged Dr. Templet's qualifications as an expert in environmental science.  Plaintiffs argue that Dr. Templet's opinion that a comprehensive cleanup is needed addresses Plaintiffs' requirement of commonality; thus, Plaintiffs argue that it is directly relevant to class certification.  Moreover, Plaintiffs contend that Dr. Templet's opinion is grounded in his own knowledge and experience and is based upon data taken from a variety of sources in St. Bernard Parish – information from the EPA, from other experts for Plaintiffs, and from Defendant.  As such, Plaintiffs argue that it is unnecessary for Dr. Templet to perform experiments and studies of his own in the parish.

### 3.      Admissibility of Dr. Paul Templet's Opinion

Dr. Templet's testimony is offered to establish commonality, typicality, predominance,

and superiority in this matter.  Templet appears well-qualified to testify as an environmental

scientist.  Moreover, Dr. Templet states that his opinion is based on information taken from the

parties and from independent sources.  Again, the issue with this expert is relevance.  Dr.

Templet's testimony appears to have some relevance to Plaintiffs' commonality argument.  The

question is how much relevance Dr. Templet's opinion should have, not whether Dr. Templet's

opinion is admissible.  Accordingly, Defendant's motion to exclude Dr. Templet's testimony is

DENIED.

### g.      Plaintiffs' Expert, Dr. Vincent Wilson

Plaintiffs have retained Dr. Vincent Wilson to testify as an expert regarding cross-

contamination of properties in the area affected by the oil spill.  Dr. Wilson is a toxicologist who

specializes in air quality and environmental toxicology.  He holds a Ph.D. in pharmacology and

toxicology from Oregon State University, and an M.S. in Physical Chemistry from the University

of California.  He has extensive research experience in the field of environmental toxicology and

has published extensively on the subject.  Dr. Wilson intends to testify that uncontaminated

properties in the affected area are exposed to a risk of contamination because of their proximity

to contaminated properties.  Also, Dr. Wilson will testify that individuals present in both

contaminated and uncontaminated properties are at risk of contracting diseases related to

chemical exposure.

### 1.      Defendant's Objections

Defendant objects to Dr. Wilson's testimony on the grounds that he has performed no

studies or testing in St. Bernard Parish itself or on the mobility of chemicals in St. Bernard

Parish.  In addition, Defendant argues that Dr. Wilson based his opinion on the allegedly faulty

presumption that there is any contamination in the affected area.

### 2.      Plaintiffs' Response

The Court received no written response from Plaintiffs on Dr. Vincent Wilson.

### 3.      Admissibility of Dr. Vincent Wilson's Opinion

Plaintiffs offer Dr. Wilson to establish commonality, numerosity, typicality, and predominance in this case.  Dr. Wilson is well-qualified in his field of environmental toxicology, and he appears to have extensive knowledge about the ability of environmental contaminants to cause personal injury and disease.   Defendant's arguments for exclusion of Dr. Wilson appear to address the merits of the dispute – whether there is long-term contamination in the affected area. Also, in his report, Dr. Wilson cites to several sources of information from St. Bernard Parish, including information from other experts for Plaintiffs and information from the ATSDR. Because Dr. Wilson's testimony appears reliable and relevant to the issues surrounding class certification, Defendant's motion to exclude his testimony is DENIED.

### h.      Defendant's "Fingerprint" Expert, Scott Stout

Defendants plan to offer Scott Stout as an expert regarding the extent and distribution of crude oil in the area surrounding the Murphy Oil refinery.  Dr. Stout is an organic geochemist with nineteen years of industry experience.  He has published extensively in geochemistry and is editing a textbook on fingerprinting of oil spills.  Dr. Stout has a Ph.D. and M.S. in Geology from Pennsylvania State University, and he has served as an expert in environmental forensics in numerous cases.

### 1.      Plaintiffs' Objections

Plaintiffs argue that the Court should exclude the testimony of Scott Stout because his

opinion fails to meet basic standards of reliability. Plaintiffs specifically contend that Dr. Stout's use of the Revised Nordtest Method in his sampling and analysis in St. Bernard Parish is fatally flawed. Plaintiffs state that the Nordtest Method is primarily used in nordic climates for oil spills on the open sea, and thus has no applicability to this incident. Moreover, Plaintiffs argue that Dr. Stout chose the Nordtest Method even though it is not an approved American standard for land-based oil spill identification. Because the Nordtest Method has not received American approval, Plaintiffs argue that it is not "generally accepted" science within the meaning of *Daubert* and Rule 702.

###### 2.    Defendant's response

Defendant responds by pointing to Dr. Stout's expertise and extensive experience in geology and oil spill identification. Regarding the Nordtest method, Defendant argues that Nordtest is peer-reviewed, and shares much in common with the American standard, the American Society of Testing and Materials ("ASTM") methodology. Defendant contends that the Nordtest protocol incorporates and extends the ASTM methodology, but does not replace it. Regarding Plaintiffs' argument that Nordtest only applies to waterborne oil spills, Defendant argues that Dr. Stout was retained to determine where oil is, and that there is no difference in that analysis if the oil is on land or on water.

###### 3.    Admissibility of Scott Stout's Opinion

Dr. Stout's impressive educational background and extensive experience qualify him to render an expert opinion in this matter. Plaintiffs do not challenge Dr. Stout's level of expertise. Regarding the Nordtest protocol used by Dr. Stout, the method appears to be sound and to have general scientific acceptance, although it is not the American standard. At this stage of the case,

the Court cannot determine whether Nordtest is only accepted for use in waterborne oil spills. Dr. Stout in his deposition states that the distinction between waterborne and land-based spills is irrelevant. Also, it is unclear whether the Murphy Oil spill should be classified as land-based or waterborne, given the flooding in the parish; thus, the Nordtest method may have relevance if the spill is considered waterborne.

Again, the primary issue is what weight the Court should afford to Dr. Stout's opinion, and not whether it is scientifically sound. Dr. Stout's opinion appears on its face to have the hallmarks to reliability. Accordingly, Plaintiffs' motion to exclude Dr. Stout's testimony is DENIED.

## III. Conclusion

Accordingly, Defendant's motions in limine to exclude the expert testimony of John Kilpatrick, Philip Bedient, Marco Kaltofen, Paul Templet, and Vincent Wilson are DENIED. Defendant's motion regarding Dr. Erno Sajo is GRANTED IN PART, and Dr. Sajo shall testify in accordance with the limitations set forth in this Order. Plaintiffs' Motion in Limine to Exclude the Testimony of Scott Stout is DENIED.

New Orleans, Louisiana, this  11th  day of January, 2006.

United States District Judge